UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-2900-BLG

UNITED STATES OF AMERICA

vs.

JUAN GONZALEZ DIAZ,
MANUEL BLANCO,
HUGO DIEZ FERNANDEZ, and
NORBERTO DIAZ OLIVERA,

    Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes  __x__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes  __x__ No

    Respectfully submitted,

    WIFREDO A. FERRER
    UNITED STATES ATTORNEY

BY: *A. R. Walkins*
    ARIMENTHA R. WALKINS
    ASSISTANT UNITED STATES ATTORNEY
    Florida Bar No. 0897787
    99 N. E. 4th Street
    Miami, Florida 33132-2111
    TEL (305) 961-9091
    FAX (305) 530-7976
    Arimentha.Walkins@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Juan Gonzalez Diaz, Manuel Blanco,<br>Hugo Diez Fernandez, and Norberto Diaz Olivera,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 15-2900-BLG<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __about June 27 to June 28, 2015__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2315 and 371 | Did knowingly conspire to receive, possess, conceal, store and sell goods of the value of $5,000 or more that had been shipped in interstate commerce after being stolen, unlawfully converted, or taken. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Angel E. Martinez, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6-29-15

_____
*Judge's signature*

City and state: Miami, Florida

BARRY L. GARBER, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, ANGEL E. MARTINEZ, a Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since March of 2002. Your Affiant is currently assigned to the Miami Metropolitan Major Theft Task Force (MMMTTF), investigating complex major theft by organized criminal enterprises. I have prior experience investigating organized crime, public corruption, counterterrorism, drug trafficking, money laundering, as well as crimes against persons and property.

2. Your Affiant has attended numerous courses on conducting criminal investigations and has authored several search and seizure warrants during his tenure with the FBI. During my law enforcement career, I have participated in numerous investigations of theft and other criminal matters. Through my training, education, and experience as well as my conversations with investigators experienced in cargo theft matters, I have become familiar with the manner in which cargo thieves steal merchandise and how they facilitate the transportation, concealment and sale of stolen property.

3. This Affidavit is made in support of a criminal complaint charging JUAN GONZALEZ DIEZ, MANUEL BLANCO, HUGO DIAZ FERNANDEZ, AND NORBERTO DIAZ OLIVERA with conspiring to receive, possess, conceal, store and sell stolen goods, which had been shipped in interstate commerce, in violation of Title 18, United States Code, Section 2315 and Title 18, United States Code, Section 371.

4. This Affidavit is based on my personal knowledge, training and experience, facts related to me by other law enforcement officers and personnel, and information obtained from a confidential source ("CS"). Because this Affidavit is being submitted for the limited propose of demonstrating probable cause, it does not contain all of the information known to me and other law enforcement officers concerning this investigation. Rather, it contains only those facts necessary to establish probable cause.

5. I have worked with the CS for approximately two months. During this time, the CS had provided information that has led law enforcement to subjects involved in organized retail theft. Law enforcement has conducted investigations of the subjects so identified and has independently verified their involvement in ongoing criminal activity.

## PROBABLE CAUSE

6. On or about June 1, 2015, FBI received intelligence from the CS regarding thefts of cargo at several truck yards in Medley, Florida.

7. On or about June 7, 2015, the CS provided information concerning an unidentified male ("UM 1") who had approached several individuals who worked in truck yards in the Medley area. The CS reported that UM 1 offered to pay the CS to allow UM 1 to access a truck yard to steal a tractor-trailer containing valuable merchandise. Based on the information provided by the CS, FBI initiated an investigation.

8. On or about June 14, 2015, the CS reported that UM 1 offered to pay the CS to allow UM 1 to come onto a truck yard to pre-select a tractor-tractor full of merchandise for UIM 1 to steal.

9. Subsequently, a number of FBI authorized telephone calls were made between the CS and UM 1. Consensual audio recordings were made of several of these calls.

2

10. During the consensually monitored calls, UM 1 agreed to pay the CS for allowing him access to a truck yard. UM 1 told the CS that he would pay the CS part of the money up front and the remainder of the money after the stolen merchandise had been sold. UM 1 told the CS that he want to meet the CS at the truck yard beforehand to pre-select a tractor-trailer to steal.

11. On or about June 27, 2015, UM 1, accompanied by two other unidentified males, met with the CS at the designated truck yard in Medley, and identified the tractor trailer with the merchandise to be stolen. This meeting was consensually monitored by law enforcement.

12. During this meeting, UM 1 told the CS that he would return the next morning to steal the tractor-trailer. UM 1 agreed to pay the CS some money when he came back tomorrow and some additional money when the stolen merchandise was sold. UM 1 told the CS that he already had a buyer for the stolen merchandise.

13. On or about the morning of June 28, 2015, law enforcement established surveillance at the designated truck yard.

14. Law enforcement observed UM 1, and the two unidentified males from the night before, arrive at the truck yard and meet briefly with the CS to pay him. Your Affiant subsequently recovered the money from the CS. A consensual recording was made of this meeting.

15. Shortly after meeting, UM 1 and one of the unidentified males got into the pre-selected tractor-trailer and drove the tractor-trailer out of the truck yard. Law enforcement observed that the stolen tractor was white in color.

16. The other unidentified male followed the tractor-trailer in a sport-utility vehicle that they had arrived in. The unidentified male in the sport-utility vehicle was observed by law enforcement executing surveillance detection maneuvers.

17. The men drove the stolen tractor-trailer to a nearby truck yard in Medley, while being followed by the counter surveillance vehicle.

18. Law enforcement officers observed the tractor-trailer as it left the first truck yard and maintained surveillance of the tractor-trailer as it was driven to the second truck yard.

19. Upon arrival at the second truck yard, the men drove the tractor-trailer to the back of the truck yard and into an area covered with an awning.

20. The three men got out of their respective vehicles and began talking with some men that were already present at the second truck yard.

21. Shortly thereafter, a second tractor-trailer was driven over to the awning, and parked with its trailer back-to-back with the stolen tractor-trailer. This procedure is used to off load cargo from one trailer to another when there is no loading dock or ramp readily available.

22. Law enforcement observed as the stolen merchandise was transferred from the first trailer to the second trailer. Several men, including the subjects in question and the three unidentified males who had stolen the tractor-trailer, were on-scene.

23. At some point during the off loading of the merchandise, the three unidentified males left the second truck yard in the sport utility vehicle, and did not return.

24. Once the offloading was completed, the second tractor-trailer which now contained the stolen merchandise was moved to another location in the back of the truck yard.

25. The stolen tractor-trailer moved to another area of the truck yard, dropped the trailer at a parking space, and returned to the spot under the awning.

26. The four subjects were observed dismantling and reconfiguring the stolen tractor, which included removing all vehicle markings, replacing the entire front end of the tractor with a different front end, and painting the tractor blue. Law enforcement approached the men while they were in the process of reconfiguring the tractor and detained them.

27. While the men were being detained, law enforcement officer saw, in plain view through an open door of one of the subject's vehicle, a yellow Hummer, which was parked behind the trailer with the music blaring, boxes of clothing that matched the description of the stolen merchandise that was later recovered. It was subsequently determined that the vehicle belonged to JUAN GONZALEZ DIAZ.

28. In my experience, cargo theft crews purposely reconfigure stolen tractors and trailers for illegal resale or use the stolen tractors and trailers to commit additional cargo thefts.

29. While the men were detained, law enforcement officers recovered the trailer with the stolen merchandise. Law enforcement determined that the recovered goods were part of a load of merchandise that was previously stolen, on or about May 15, 2015, while en route to J.C. Penny, in Forrest Park, Georgia. The stolen merchandise had been transported from Georgia to Medley, Florida.

30. The estimated value of the recovered merchandise is in excess of $1 million.

31. Law enforcement determined that the trailer portion of the tractor-trailer onto which the stolen merchandise was off loaded had been stolen from Hillsborough County, Florida.

32. Law enforcement interviewed the owner of the truck yard who advised that the parking space where the stolen trailer was parked was leased to JUAN GONZALEZ DIAZ.

33. Upon recovery of the stolen merchandise, the four men, subsequently identified as JUAN GONZALEZ DIAZ, MANUEL BLANCO, HUGO DIEZ FERNANDEZ, AND NORBERTO DIAZ OLIVERA were arrested and charged with conspiring to receive, possess, conceal, store and sell stolen goods, in violation of Title 18, United States Code, Section 2315 and Title 18, United States Code, Section 371.

## CONCLUSION

34. Based upon the facts and information set forth in this Affidavit, your Affiant believes that there is probable cause to believe that JUAN GONZALEZ DIAZ, MANUEL BLANCO, HUGO DIEZ FERNANDEZ, and NORBERTO DIAZ OLIVERA were involved in a conspiracy to commit one or more offenses against the United States, that is, conspiring to receive, possess, conceal, store and sell goods of the value of $5,000 or more, which goods had crossed a State line after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken, in violation of Title 18, United States Code, Section 2315 and Title 18, United States Code, Section 371.

FURTHER AFFIANT SAYETH NAUGHT.

_____
ANGEL E. MARTINEZ, SPECIAL AGENT
Federal Bureau of Investigation

Sworn to and subscribed before me,
on this 29th day of June 2015, in Miami, Florida.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE